In the Matter of ACORN BUILDING COMPONENTS, INC., Debtor.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) and Its Local 2194, Plaintiffs/Appellants,

v.

ACORN BUILDING COMPONENTS, INC. and Official Committee of Unsecured Creditors of Acorn Building Components, Inc., Defendants/Appellees.

Bankruptcy No. 92–04583–G.
Adv. No. 93–4182.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

April 6, 1994.

**170**

Michael B. Nicholson, Detroit, MI, for U.A.W.

Phillip J. Shefferly, Shefferly & Silverman, P.C., Southfield, MI, for debtor.

Sheryl L. Toby, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Penn General.

M. Joseph Mack, Asst. U.S. Trustee.

## OPINION DENYING ENTRY OF UAW'S 1113(F) ORDER

RAY REYNOLDS GRAVES, Chief Judge.

This matter is before the Court upon remand from the Honorable Anna Diggs Taylor of the Eastern District of Michigan, directing this Court to rule on the merits of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and UAW Local 2194 (collectively UAW's Motion [for] Entry of Order Under § 1113(f)) payment of wages and benefits served under the Collective Bargaining Agreement as administrative expenses.

This Court having previously engaged in a lengthy colloquy during the hearing held on July 20, 1992 between the parties and upon a thorough review of the extensive pleadings hereby denies entry of the UAW's order.

### Introduction

On April 6, 1992, the Debtor commenced these proceedings under Chapter 11. Shortly thereafter, on or about June 24, 1992, the Debtor filed an application to reject the collective bargaining agreement ("agreement") between the Debtor and the UAW. In response, the UAW filed a Motion for Entry of Order Under Section 1113(f) of the Bankruptcy Code (i) requiring compliance by Debtor with collective bargaining agreement and (ii) payment of wages and benefits as administrative expenses.

After a lengthy hearing on the motion and upon extensive colloquy between the Court and all parties, this Court denied the Union's motion as to part (i) and held part (ii) as moot. The UAW appealed this Court's decision to the Eastern District of Michigan whereby this Court's ruling as to part (i) was upheld and part (ii) was remanded to this Court for a decision on the merits.

### Issue

The Union contends in part (ii) of its motion that pre-petition health claims should be given administrative priority in accordance with 11 U.S.C. § 1113(f).

### Discussion and Law

#### I.

The applicable standard in determining the rejection of a collective bargaining agreement finds its genesis in *Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1948), which pre-dates 11 U.S.C. § 1113. In *Bildisco,* the Supreme Court held that the filing of a bankruptcy petition rendered unenforceable a collective bargaining agreement to which a debtor was a party. As a result, the debtor was able to unilaterally terminate or modify the terms of a collective bargaining agreement pursuant to 11 U.S.C. § 365. In *Bildisco,* the Court agreed that 11 U.S.C. § 365 applied to collective bargaining agreements, but that the special nature of a collective bargaining agreement gave rise to a special standard.

In response to *Bildisco,* Congress enacted 11 U.S.C. § 1113 embracing the question of rejection of labor contracts in bankruptcy. *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 989, cert. denied, sub nom. *Air Line Pilots Ass'n v. Shugrue,* —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991) ("Ionosphere"). Subparagraph (f) of § 1113 provides that "[n]o provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provision of a collective bargaining agreement prior to compliance with the provisions of this section."

In accordance with *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the clear and unambiguous language of a statute must be construed. Specifically 11 U.S.C. § 1113 provides that nothing in Title 11 should be construed to prevent the trustee or the debtor-in-possession from unilaterally altering or terminating the provisions of a collective bargaining agreement absent compliance with § 1113. See 11 U.S.C. § 1107. Therefore,

§ 1113 stands for the premise that a trustee or debtor-in-possession is bound by the terms of a collective bargaining agreement post-petition, until the collective bargaining agreement is modified or rejected. See *Ionosphere*, 922 F.2d at 990. Accordingly, § 1113(f) reverses that part of *Bildisco* which held that a trustee or debtor in possession was not legally bound to a collective bargaining agreement subsequent to the filing date and prior to the Court's determination of the application for authority to reject such agreement. We may therefore glean that by its very terms, § 1113(f) does not affect pre-petition conduct of a debtor, nor does it have any bearing on the consequences of such pre-petition conduct.

## II.

The UAW asserts that in accordance with *Unimet Corp. v. United States Steelworkers of America*, 842 F.2d 879 (6th Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988) ("Unimet") 11 U.S.C. § 1113, and not the law with respect to rejection of executory contracts, is applicable under 11 U.S.C. § 365, and must control disposition of the UAW's motion. *See also Ionosphere*. The UAW further contends that the Sixth Circuit, by quoting Senator Packwood and other legislative sponsors of 11 U.S.C. § 1113, has made it clear that § 1113(f) requires a debtor to comply with all the terms of the collective bargaining agreement until the debtor obtains relief under § 1113.

The UAW analyzes the holdings in *Unimet* and *Ionosphere* and concludes that "the language of the statute indicates that Congress intended § 1113 to be the sole method by which a debtor could terminate or modify a collective bargaining agreement and that application of other provisions of the bankruptcy code that allow a debtor to bypass the requirements of § 1113 are prohibited." *Ionosphere*, 922 F.2d at 989–90.

After an extensive analysis of the legislative history of § 1113(f) and upon a well developed analysis of *Ionosphere*, *Bildisco* and *Unimet*, the UAW concludes that due to the enactment of § 1113(f), debtors may no longer be authorized by a section of the bankruptcy code to achieve unilateral altera-

tions in the terms provided by a collective bargaining agreement, whether these alterations involve a failure to pay wages or benefits called for by such an agreement, or any other terms of such an agreement pre or post-petition.

■ Contrary to the Union's assertions that pre-petition claims of its members should be elevated to administrative priority status as a result of § 1113(f), such priority was neither intended nor mandated by the language of the statute.

The UAW's reliance upon *Unimet* and *Ionosphere* is misplaced. In *Unimet*, the employer closed its manufacturing plant and laid off all union represented employees ten months before commencing chapter 11 proceedings. After the filing, the debtor informed the Union that it wished to eliminate health and life insurance for retirees. The debtor then filed a motion seeking authority to pay the premiums necessary to provide *post-petition* health care benefits to its retirees as an administrative expense that, in the words of the Sixth Circuit, "proceeded to, in effect argue against the motion by advocating the position that payment of retiree insurance premiums could not be characterized as an administrative expense", *Unimet*, at 880 (citations omitted). Both the Bankruptcy Court and the District Court determined that § 1113 did not apply to retirees, and that payment to the retirees did not meet the test for an administrative expense under § 503 of the code. The Sixth Circuit, in reversing the District Court held that the debtor could not terminate post-petition benefits to its retirees.

Accordingly, *Unimet* only stands for the proposition that the debtor in possession could not unilaterally abrogate its post-petition obligations under a collective bargaining agreement, regardless of whether the obligations ran to current employees or retirees and regardless of whether the service provided by such current employees and retirees, if any, would otherwise qualify for administrative expense treatment under 11 U.S.C. §§ 503(b)(ii).

This Court, however, finds that the *Unimet* decision does not elevate pre-petition

obligations under a collective bargaining agreement to the same status enjoyed by other § 507 priority claims and beyond to administrative expense status under § 503. To make such a leap obviously contradicts the holding in *Unimet*. Clearly the *Unimet* decision is of no consequence to pre-petition obligations at issue in the case *sub judice*.

Similarly, the UAW's reliance upon the *Ionosphere* decision does not provide authority for the Union's pre-petition claim that § 1113(f) mandates the payment of pre-petition collective bargaining claims as administrative claims. *Ionosphere* merely enforces the notion that Congress intended that a collective bargaining process continue after the filing of a bankruptcy petition unless and until the debtor complies with the provisions of § 1113(f), 922 F.2d at 990. The *Ionosphere* Court concludes that § 1113(f) precludes application of the automatic stay to disputes involving a collective bargaining agreement only when its application allows a debtor unilaterally to terminate or alter any provision of a collective bargaining agreement, *Id.*, at 994. Accordingly, *Ionosphere* articulates procedural issues relating to an attempt to arbitrate collective bargaining agreement disputes. The claims in *Ionosphere* have no bearing in the instant case.

The Union asks this Court to rule that § 1113 overrides the priority provisions of § 507 without supporting language in any section of the code or case law. Moreover, the Union's contentions lack evidence of congressional intent. The Union's reliance upon *Unimet* and its siblings is of no moment.

The same contentions of the UAW were rejected in *In re Armstrong Store Fixtures Corp.*, 135 BR 18 (Bankr., W.D., PA, 1992) which addressed the identical issue of whether 11 U.S.C. § 1113(f) supersedes 507(a). In that case, the Court rejected the seminal position asserted by the Union that § 1113(f) by its terms supersedes and thereby renders inoperative other code provisions for determining priority of claims, which is the same argument being made by the UAW in this case.

In a thorough analysis, the *Armstrong* Court reasoned that application of these principles of statutory construction permits 11 U.S.C. § 1113(f) and § 507(a) to be harmonized rather than compelling the conclusion that the former renders the later inoperative. In this regard the Court held:

> Subsection 507(a) categorizes the claims that are to receive distribution.... Subsection 1113(f) is intended to prohibit the application of other code provisions to the extent that their application will enable a debtor to effect unilateral termination or modification of a collective bargaining agreement.... To the extent that another code provision does not enable a debtor to do so, it is not rendered inoperative by 11 USC § 1113(f). 135 BR at 22.

Application of 11 U.S.C. § 507(a) would not facilitate unilateral termination or alteration by debtors of the agreements. To the contrary 11 U.S.C. § 507(a) applies only after a violation of § 1113(f) has occurred.

The *Armstrong* Court concluded that once 1113(f) is violated it then becomes necessary to categorize and rank the claims arising from that violation. It follows that § 1113(f) does not supersede and render 11 U.S.C. § 507(a) inoperative when determining the priority to be awarded to employee claims arising from a violation of § 1113(f). If a claim is to be treated as an administrative claim it must qualify as such pursuant to 11 U.S.C. § 507(a).

In the case at bar, the pre-petition claims do not rise to the level of priority claims pursuant to 11 U.S.C. § 507(a). Moreover, the UAW has failed to persuade this Court to treat said claims with such priority.

### Conclusion

The pre-petition collective bargaining claims asserted by the UAW are not entitled to administrative expense status. Once again, this Court notes the compelling public policy concerns as expressed by the UAW, however the UAW has not provided this Court with authority to hold that the UAW's pre-petition claims rise to the level of priority claims. Accordingly, the UAW's motion is hereby denied.

**IT IS SO ORDERED.**